# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   v.                                                        **Case No. 08-CR-263**

**REGINALD BLOUNT**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Reginald Blount pleaded guilty to possessing a firearm as a felon, contrary to 18 U.S.C. § 922(g)(1), and possessing marijuana with intent to distribute, contrary to 21 U.S.C. §§ 841(a)(1) & (b)(1)(D), and I set the case for sentencing. In imposing sentence, I first calculated the advisory guideline range, then determined the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., Gall v. United States, 552 U.S. 38, 49-50 (2007); United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008). This memorandum sets forth written reasons for the sentence imposed.

## I. GUIDELINES

On the firearm count, the pre-sentence report ("PSR") set a base offense level of 24 under U.S.S.G. § 2K2.1(a)(2) based on defendant's two prior convictions for controlled substance offenses, then added 4 levels under § 2K2.1(b)(6) because defendant possessed the firearm in connection with another felony offense, i.e. marijuana distribution, for an adjusted level of 28. Because the drug count embodied conduct treated as a specific offense characteristic on the firearm count, the PSR grouped the two counts under § 3D1.2(c). The drug count carried a base level of 8 under U.S.S.G. § 2D1.1(c)(16), so the PSR used the higher

level produced by the firearm count. See U.S.S.G. § 3D1.3(a). The PSR further concluded that based on his two prior convictions for controlled substance offenses defendant qualified as a career offender under U.S.S.G. § 4B1.1 on the drug count. That count carried a statutory maximum of 5 years, so the offense level determined under § 2K2.1 produced a higher offense level than did the career offender guideline. Accordingly, the PSR used the § 2K2.1 level of 28, see U.S.S.G. § 4B1.1(b), then subtracted 3 level for acceptance of responsibility under § 3E1.1 for a final level of 25. Finally, based on the career offender designation, the PSR assigned a criminal history category of VI, see U.S.S.G. § 4B1.1(b), creating an imprisonment range of 110-137 months. Neither side objected to these calculations, which I found correct and adopted accordingly.

## II.  SECTION 3553(a)

**A.    Sentencing Factors**

Section 3553(a) directs the sentencing court to consider:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the advisory guideline range;

2

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute requires the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public, and rehabilitation of the defendant. While the guidelines will generally be the starting point and the initial benchmark in making this determination, the court may not presume that the guideline sentence is the correct one. Rather, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the court must consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. The court must make an individualized assessment based on the facts presented and, after settling on the appropriate sentence, adequately explain its decision. See Gall, 552 U.S. at 49-50.

**B.     Analysis**

   **1.     The Offense**

On July 30, 2008, police executed a search warrant at defendant's residence based on information from an informant that defendant possessed marijuana. Defendant answered the door and admitted he had a pound of marijuana in his bedroom and that there was a pistol next to the bed. In the bedroom, officers found ten bags of marijuana totaling 754 grams, a digital scale, packaging materials, $413, a box of ammunition and a blue pistol case containing a loaded 9 mm pistol.

3

After being advised of his rights, defendant admitted that he had marijuana in his bedroom and that his girlfriend's pistol was next to the bed. He further admitted selling marijuana and controlling the apartment. He stated that his girlfriend bought the gun four months prior for protection but admitted that he handled it. Based on his prior felony convictions, defendant could not lawfully possess a gun.

### 2. The Defendant

Defendant was thirty-three years old, with a prior record for this type of conduct. In 1999, he was convicted of misdemeanor carrying a concealed weapon and sentenced to 10 days jail. In 2003, he was convicted of marijuana possession with intent to distribute, receiving a sentence of probation with 4 months jail as a condition, which he was able to complete despite a few problems. Then in 2005, he was convicted of possession of cocaine with intent to sell and keeping a drug house, receiving a sentence of 18 months prison. Released in August 2006, he committed the instant offenses less than two years later, leading to revocation of his state extended supervision and a one year revocation sentence, which he completed in July 2009 while this case was pending. He seemed to be doing well on state supervision, working regularly and testing negative, until his arrest in this case.

The record contained some positives. Defendant's girlfriend, an LPN, remained supportive. She told the PSR writer that defendant helped raise her two children from a previous relationship, and that they planned to marry in the future. Regarding this case, she stated that the gun was her's, and that she bought it for protection after her house was broken into. She admitted that defendant used marijuana, but stated that it was for pain relief related to a work injury. The PSR confirmed that defendant underwent back surgery following a serious work-related injury, as well as treatment for a brain aneurism and seizures. At the

4

sentencing hearing, defendant's girlfriend further stated that defendant was a gentle person, lacking violent tendencies. His mother also appeared and made a statement in support. Finally, defendant obtained an HSED in state prison after dropping out of school and compiled a decent work record, as set forth in ¶¶ 80-87 of the PSR.

### 3. The Sentence

The guidelines called for 110-137 months imprisonment in this case, a term exceeding the statutory maximum on the firearm count (and more than double the maximum on the drug count) at the high end. The government, stressing defendant's prior record and the need to deter and protect the public, recommended a sentence of 100 months. Defendant argued that the career offender designation overstated his record and requested that I treat him as a criminal history category IV offender, which would create a range of 84-105 months.

I agreed that the guideline sentence was somewhat greater than necessary in this case. The base offense level under U.S.S.G. § 2K2.1 increased from 14 to 24 based on defendant's two prior drug cases, both of which involved small amounts of controlled substances – about 1 kg of marijuana in the first case and less than 20 grams of cocaine in the second. Neither of those cases suggested that defendant posed a significant threat of gun violence. Indeed, he appeared to have no history of violence of any sort. Nor was there any evidence that he used, threatened to use or intended to use the gun involved in this case, that he took it out of the apartment, or that he handled it for any significant period of time. Finally, the amount of marijuana defendant possessed for re-sale in this case was very small, less than 1 kilogram, producing an offense level of just 8. The record contained no indication that he was a dealer of any significance. Under these circumstances, the sentence recommended by the guidelines was somewhat greater than needed to provide just punishment. See 18 U.S.C. §

5

3553(a)(2)(A).

It was also somewhat greater than necessary to protect the public. See 18 U.S.C. § 3553(a)(2)(C). Defendant's criminal history category increased from IV to VI based on these two minor, prior drug cases, and as the Sentencing Commission has acknowledged, the career offender guideline may produce a sentence greater than necessary to protect the public from further drug dealing in such circumstances. See United States v. Santoya, 493 F. Supp. 2d 1075, 1079-80 (E.D. Wis. 2007) (citing United States Sentencing Commission, Fifteen Years of Guideline Sentencing 133-34 (Nov. 2004)).

A significant period of imprisonment was needed to deter, as the instant offense was defendant's third drug distribution case. See 18 U.S.C. § 3553(a)(2)(B). However, given the length of the previous sentences defendant served – 4 months and 18 months – I found a sentence below the range sufficient to satisfy this purpose. Courts should generally impose incremental punishments to deter. See United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005).[1]

Under all of the circumstances, I found a total period of confinement of 84 months sufficient but not greater than necessary. This sentence accounted for the mitigating aspects of the case discussed above, while still providing for a substantially longer term than defendant had previously served in order to deter him from returning to drugs and weapon possession.[2]

---

[1] Defendant's correctional needs included further drug treatment, perhaps obtaining vocational skills, but they did not appear to be a significant factor in this case. See 18 U.S.C. § 3553(a)(2)(D).

[2] This sentence varied modestly from the guidelines, and because it was based on the particular facts of the case and Commission study, as discussed above, it created no unwarranted disparity. See 18 U.S.C. § 3553(a)(6).

6

In setting the final term, I took into account the fact that defendant had been in custody since July 2008 based on the instant offense conduct, and that one year of this time (allotted to the state revocation sentence) would not otherwise be credited to his federal sentence. See 18 U.S.C. § 3585(b). The state term had discharged by the time I sentenced defendant,[3] but I found that a concurrent term would have been reasonable in this case as the revocation was based solely on the instant offense conduct rather than other violations. See United States v. Huusko, 275 F.3d 600, 603 (7th Cir. 2001). I thus found it appropriate to adjust the instant sentence to account for the time credited to the state revocation sentence. See United Sates v. Valadez, No. 07-CR-245, 2008 WL 4066092, at *3 (E.D. Wis. Aug. 27, 2008) (reducing federal sentence to account for discharged state revocation sentence based on the same conduct); see also United States v. Villegas-Miranda, 579 F.3d 798, 802-03 (7th Cir. 2009) (indicating that a district court may impose a lower sentence based on the lost opportunity to serve federal time concurrent with state time).

### III. CONCLUSION

I therefore committed defendant to the custody of the Bureau of Prisons for 72 months on the firearm count and 60 months on the drug count running concurrently. Upon release, I ordered him to serve two years of supervised release, with a drug aftercare, financial disclosure and other conditions that appear in the judgment.

Dated at Milwaukee, Wisconsin, this 20th day of January, 2010.

/s_____
LYNN ADELMAN
District Judge

---

[3]Final resolution of this case was delayed for several reasons, some (including withdrawal of his second lawyer and recusal of the judge initially assigned) beyond defendant's control.

7